Which is Nobel v. The Village of Elliott, Mrs. Redwood and Mrs. Redwood May it please the court, my name is Jude Redwood, I represent Robert Noble. The world as we know will end by some measure if this court fails to support and protect the Fourth Amendment. The Fourth Amendment is being chipped away. The curtilage of a citizen's home receives the same protection as the home itself. And the right-of-way, if it's in the right-of-way it can't be part of the curtilage, right? Property lines don't necessarily define curtilage, so that's not always right and the property lines, many cases say that, that the property lines, these yellow lines, don't define curtilage. Not necessarily. I don't understand you. If the car isn't parked on your land, then what rights do you have? The car was parked for two main reasons here, Mr. Noble should win. Number one, the car was parked where it was parked with the permission of Deputy Keating, who was acting as an agent for the Village of Elliott, when the deputy and the mayor were out stickering cars. They came to Mr. Noble's property after he received the letter saying your tagged vehicles are in violation. He got rid of the tagged vehicle. No other vehicles were identified by this letter except the tagged one. The deputy came to the door, Mr. Noble said, I've got this other car here. The plates are expired, but I want to sell it. Is it okay where it is? The deputy said, does it run? Yeah, it runs. The deputy said, I see it has new tires. Mr. Noble said, you want me to start it up and prove it? No, that won't be necessary, said Deputy Keating, who was there with the mayor as an agent for the village, stickering cars for the village ordinance. Yeah, they were trying to make sure it wasn't the neighbor's car, right? Deputy Keating was trying to, at that point, trying to determine a car, if it was a neighbor's car or not. Yeah, because they tagged two or three of the neighbor's cars. They did. They did, but they didn't tag Mr. Noble's car. And Mr. Noble specifically asked him, is this car right here okay? Because I don't have a sticker on it, I'm trying to sell it. So he got permission right there from the deputy, who was there with the mayor, and the mayor was standing nearby, and he got permission. So we have permissive parking there. So that's similar to Cox v. Louisiana and Vodak v. Chicago. You can't go through the police, give permission to do something, and then revoke that permission without letting the person know that you're revoking the permission. What are the damages that your client sustained? He got his car back. He got his car back, he had to pay for it, and he lost the opportunities to sell it during that six days. He wasn't told. He came home that night, he called the mayor on the telephone. Remember, this is a town of under 300 people. He called the mayor on the telephone and said, look, if you'd just told me that you It was after midnight, right. That's correct. So the mayor gets this sometime after midnight. 1205. Okay. Okay, that is a testimony. So the mayor doesn't tell him right then where the car is, right? No, in fact, the mayor tells him, I don't have to tell you that, and never tells him, as a matter of fact, where the car is at. But he's got the car back within five or six, seven days? Six or seven days, he has the left it there, when he got it back from the tow company. How much is the damage? I'm curious that this would give rise to a lawsuit. It doesn't seem to be much involved in the way of harm. There is enough harm, there is enough damage to substantiate a lawsuit. But the damage is to your rights under the Fourth Amendment, to Mr. Noble's rights under the Fourth Amendment. And to make some good law here for these local communities, where the mayor and Barney Fife decide they can go out and tow somebody's car just because they want to. So you're talking about an illegal seizure? It is an illegal seizure, and it's a seizure without due process. You know, I have a different picture. You put a picture in the appendix, but there are also some in the record. The place looks a whole lot different about the time when the car was taken away. The place looks different now? The place does look different now than when the car was taken. You've got a cleaned up picture here. The pictures that the plaintiff, Pellin, submitted are actually from 2010. And the pictures, I believe, that the defense submitted are from 2014 maybe or 2013. They're later pictures. And Mr. Noble did, in fact, move out of the village. He moved to Gibson City. So this isn't his house anymore? It's still his house, but he doesn't live in it any longer. He wasn't living in it at the time, right? That's not correct. He was living in it at the time. He and his family lived at it. Although it's described as an apartment building, you can see by the photograph, it's appendix number 29, that it's a one-story house. I mean, I'm sorry, a one-family house. It's a two-story house at a time it was subdivided into apartments. In 2010, he lived there with his family. Now, the important thing to note is in 2010, there was no indication that the reason the car was towed is because it was on this right-of-way or public property. There's nothing in the letter from the village attorney saying your car is on public property. There's nothing from Mr. Mott, the mayor, on the telephone saying we towed it because it was on public property. The only issue was the sticker. Because the ordinance doesn't differentiate, right, on these vehicles. That's correct. They are subject to the ordinance whether they're on public or private property. That's correct. Deputy Keating never said, well, move your car. It's on public property or a few feet of it, five or six feet of it is overhanging public property. Move it. And the receipt from Wyatt, the tow receipt, says it was towed from a residence. So this entire idea that it was parked on public property isn't something that the individuals were thinking about or acting upon in 2010 at the time it was towed. And that's important to note because the whole case now is based on that. Well, that's because you've alleged it. What you're basically saying is they towed the car away because it didn't have the plates on it or whatever, and now you're saying I don't know what. You're saying you're trying to come under the Fourth Amendment as opposed to whatever the local ordinance says and all that kind of thing. The local ordinance has to comply with the Fourth Amendment. So was the tow reasonable? That's the core question here. And the letter from the village, which is a form letter. I put two copies of it that were submitted to two different residents. It's a form letter down to the misspelling of the word. It says your vehicles don't properly comply with the ordinance. What does that mean? Well, the only thing it means in the letter is, well, your vehicles were tagged. That's the only identification there. So the vehicle that was tagged belonged to Mr. Noble's son. The engine was blown. It was tagged. It was under a tarp. He told his son, you've got to get rid of it. The village wants it out of here. Within a week of getting the letter, they got that out of there. In Mr. Noble's mind, that was taken care of because his car wasn't tagged. So the mistake was made by not tagging this intrepid vehicle, right? If they wanted to tow it or somehow notice that they should have tagged it. So they should have tagged it. They should have sent another letter. They should have identified it in the letter. I mean, how much does it take to put down there this is a white Dodge Intrepid or here's the VIN number, something that lets a citizen know, and that's due process, it's basic due process, let me know what you're trying to get me for so I can respond to it. You also throw in something that's kind of vindictive. Apparently the town gossip or whoever it was wanted to run them out of town. Well, that's for the selective enforcement claim, and I've addressed that in the brief, but that doesn't apply really to the Fourth Amendment or to the due process but to the selective enforcement claim. And the second point is that Mr. Noble had an easement appurtenant. If his car was partially parked on public property, it was on the ingress and egress easement. Everybody has one. It's a right appurtenant to the property owner, and it's something that he's been using. This road here, Market Street, you have to get from there to your house. Now these yellow lines on the GIS, although they look really clear and nice in the photograph, they're not out there on the ground. We all know that. So where is this edge of the property? If you look here on appendix number 29, number one, you don't see the yellow lines, and number two, you don't see anything. We're not talking about Chicago. I don't think we're even talking about South Bend, but probably some of the places in between Chicago and South Bend. Probably where I live. Okay, good. No sewers, no fire hydrants, no curbs. Where was Market Street 135 years ago when the plat was entered? We don't know. We don't have any evidence. We don't know if the middle of Market Street now is the middle of Market Street then. And what we're talking about is a difference of like six feet. If you look at the picture, the house next door is on the road easement. And look at the grain elevator. They'd have to chop off about maybe a fourth of the edge of that grain elevator if they were going to enforce that. It's ridiculous. Anybody who comes from, goes through, knows about small towns knows that people park on that easement, not the easement, the roadway. That isn't the road. All the time. Probably no stoplights either, are there? No stoplights in Elliott. I think they have a stop sign. They don't have the railroad anymore. And my time is up. Thank you. Okay, thank you very much, Mr. Brown. Mr. Unruh. Good morning, Your Honors. I represent Lieutenant Miller and Ford County. Plaintiff does not contest that the vehicle had expired license plates, nor does the plaintiff contest that the vehicle was in violation of village ordinance. Finally, and, well, in contrast to what she's just said here, a plaintiff has never really contested the fact that the vehicle is parked, was parked, partially on public property. Now, in the court below, there was a lot of talk about expert witnesses and whether this expert was qualified to lay a foundation for public records that showed that there was a right-of-way 40 feet from the midway of Market Street. The plaintiff never contested the actual ruling, though, that there is a right-of-way that does exist. Now, I'm not saying ruling, I should say records. What we do have, though, is Robert Noble's own diagram. He went out and measured it himself. It shows clearly here that about 7 or 8 feet of his car was parked on the public right-of-way. So we have a car in violation of public ordinance. We have a car parked on public property. What we have here is a legal seizure of this car. I'm not even sure that we even need to go any further with this. Well, he says it wasn't tagged, though. He got the letter, but that particular vehicle wasn't tagged. I'm not aware that this is a part of the ordinance. We have an admittedly vehicle with unregistered license plates. That's sufficient in and of itself to have this towed if it's parked on public property, which it was. I think that brings this case to an end. Now, in terms of my client, claims under Section 1983 are based on personal involvement. It's based on fault. Now, there must be some evidence somewhere in the record that Lieutenant Miller knew that the mayor was acting wrongfully and either condoned that conduct or turned a blind eye. There must be some evidence that Lieutenant Miller either acted or failed to act with a deliberate disregard or a reckless disregard for Mr. Noble's constitutional rights. I submit that there's absolutely no evidence in the record that would support that claim. We, therefore, urge the Court to affirm the District Court's order granting summary judgment. Unless there are any further questions. I have a question. You talked a couple of state law things, whatever, what's going on, vindictive and various other things. Is there anything left of that? Are those all dismissed? The state law claims, no. Well, whatever. There was a trespass claim. She brought the town to us saying this was vindictive and that she wanted to run people out of town or something. And there was more to it. She mentioned a couple of other things that are not relevant to the federal. I believe the District Court addressed that and found there was no evidence put forward to support that. No affidavits. That's done, too, then. Absolutely. And not on appeal, apparently. I'm not aware that, I believe she may have raised a very short argument on it. But in the end, we still have no competent evidence that would support that claim. Okay. Doesn't the tow operator say at one point, though, that Lieutenant Miller directed that the tow take place? He said that he authorized it. He said that the mayor and the policeman authorized it. So that's Miller's involvement. Well, he then issued a sworn affidavit that says that the mayor was the one that authorized it. Now, there's a solution to that problem. You depose the mayor. You depose Mott. You depose anybody in this case. None of that was done. And I submit that you can't create a question of fact by failing to develop your own case. We have Miller, who was called to the scene without any knowledge of what was going on. He was told that he was there to keep the peace. He had no knowledge that a car was about to be towed. If plaintiff is going to rely on an answer to a written discovery as their sole evidence of his involvement, I submit that she has to develop that case, find out what's really there. All right. Thank you. Thank you. Okay. Thank you, Mr. Monrath. Yes. Ms. Harrington? Yes, Your Honor. Thank you. Good morning. May it please the court. My name is Allison Harrington, and I represent the Village Valiant, former Mayor Mott, and Wyatt's Collision Repair. Your Honor had inquired, I think, about one of the claims that plaintiff appellant was making, and it was part of the appeal, and that is the equal protection claim under, I think, the class of one, I believe is what you were getting at. Okay. And you were referencing some information that was provided by the plaintiff appellant in the affidavit attached in response to the motion for summary judgment, and specifically about the town gossip. I find it unique in this situation that one of the main arguments that was brought up on summary judgment was that a records keeper from the county was impermissibly disclosed, yet this quote-unquote Bobby is the only person referenced in this affidavit who had never been disclosed in discovery. We don't know who Bobby's last name is, and is, in theory, the support by the plaintiff to establish a class of one claim. And to quickly address that, under these circumstances, the plaintiff appellant can't do that, and they can't use Bobby, this unknown source, to establish that. In that type of case, they have to show that he has been intentionally treated differently from others similarly situated. We already know Mr. Noble wasn't treated any differently than his neighbor, Mr. Wilson, through the record that we know his vehicles were towed on the same exact day. In addition, they also have to show that there's no rational basis for the difference in treatment or the cause is totally illegitimate animus towards plaintiff. They're using this Bobby who's unidentified and never disclosed in discovery in order to try to establish that animus. But the reality is that's hearsay and not based on any fact in the record. What we know is that the vehicle was, by admission of the plaintiff appellant, parked on public property, and that that vehicle, by his own admission, did not have valid plates on it. By the ordinance, that is considered to be an inoperable vehicle. It was towed as a result. That is a legitimate purpose. That is a legitimate reason. They proffered no reason, no evidence in the record, to suggest that the motion for summary judgment that was granted by the court, the district court, should be reversed in that regard. She's also talked about the Fourth Amendment and the Fourteenth Amendment. Quickly, I'll go to the Fourth Amendment, and has claimed that there is a requirement that there be a judicial warrant issued before the tow could occur. Under the circumstances, this just does not make sense. They are reciting to case that counsel has personal involvement with, Redwood v. Learman, in order to establish that there had to be a judicial warrant. The big issue in this case, and the court, I believe, kind of pinpointed it immediately, is is it public or private property? Plaintiff made a point of alleging in a verified complaint that it was private property, and for a reason they did that, because they know there's case law that changes what the requirements would be under various amendments, including the Fourth and the Fourteenth. The fact that it is public property, by admission of the plaintiff, goes to show that under the Fourth Amendment, it is not required to have a judicial warrant issued. Redwood v. Learman, which they have relied upon heavily in order to establish that fact, simply says that if it is within the curtilage of a person's private property, then a judicial warrant would be necessary. We do not have those facts here. In fact, we have an illegally parked car on public property. The Sutton analysis in Sutton v. City of Milwaukee is the proper analysis. I know it's not identical. It's not the perfect match, but the analysis makes sense in this case. In addition, in the Fourteenth Amendment claim, under the Equal Protection Clause, what plaintiff is saying, again, is that various elements or various steps had to be provided as notice. The district court went through the analysis as provided by the Sutton case. Again, I believe that is controlling in this situation where you have a vehicle that is illegally parked. No notice is required. Sutton analysis further indicated that even if there's not emergency circumstances identified, that it is a legal tow to be able to tow that vehicle under those circumstances. I did want to address quickly a couple of things that were brought up in questions and answers that were provided. Council had made a statement as to damages, and one of the questions were, what were the damages? And the response was that Mr. Noble had lost the ability to sell the vehicle. I want to be very clear about the record. The tow occurred on April 9th, 2010. The court is correct in understanding that the phone call to the mayor occurred on April 10th, early morning of around 12.05 in the morning. Thereafter, by plaintiff's own deposition testimony, he admitted that he had been in contact with his neighbor, Mr. Wilson, and went to go see where his car was located in the next day or two. Mr. Noble opted not to go get his vehicle until April 16th, 2010. He didn't lose the ability to sell in that period of time. He chose not to go get his vehicle in that time period, which created more storage fees. In addition, there was a second tow that required him to be taken, he had the vehicle taken to his other home in Gibson City. He didn't have to do that. Again, something that he incurred himself. I see that my time is up, and I thank the court, and I ask that the motion for summary judgment, granted by the district court, be affirmed. Okay, thank you, Ms. Harry. So, Ms. Redwood, how much time does she have? She's out of time. Oh, you're out of time. But if you have something, you have a minute if you'd like. Thank you very much. Wyatt, the tow operator, did state under oath in his answers to interrogatories that he was authorized and directed by Miller to tow the vehicle. It's in the record. Now, as far as Mr. Noble choosing not to pick up his car right away, he didn't have contact with Wilson, the next door neighbor, because Wilson, they work different shifts, actually. Wilson works out of state. So the first time he was able to see him was later. But the important point is that he got no news from the village about where the car was so he could go and get it soon. In fact, he was rebuffed. I don't have to tell you that. Wilson and Noble had cars towed. A class of one doesn't have to be just one. It can be one group. And the evidence shows that there's cars all over town parked on that road, that 80-foot road or whatever it is that the village owns. Well, there's a license plate on the car. There's no problem parking on the street. There was a license plate on the car. It didn't have its sticker. The sticker was out of date for about a month. Most important, the plaintiff does not admit that his car was on public property. This all turns on the definition of where is the middle of Market Street? Nobody knows. Nobody presented any evidence about where the middle of it is. The middle of it doesn't have to be when you measure from end to end and go to the center. Is it a one-way street? Pardon me? Is it a one-way street? It's not a one-way street. It's an any-way street. You can even make a pulley right in the middle. It's a little town. But when you look at the GIS, you can see that the street's not in the middle of the yellow lines. The intersections are all skewed. He does not admit it. He does state it was on his curtilage, however. Thank you. Okay. Well, thank you very much to both counsel.